STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. AP-01-074


MARITA BONVILLE                    )
                                   )
          Petitioner               )
                                   )              ORDER AND DECISION
                                   )
v.                                 )
                                   )              DONALD L. GARBRECHT
DEPT. OF HUMAN SERVICES            )              LAW LIBRARY
                                   )
          Respondent               )              OCT 1 2002


          Pending before the Court is the Petitioner's, Marita Bonville ("Petitioner"), Rule

80C Petition for Appeal from the Department of Human Services' ("DHS") decision to

terminate her Medicaid benefits. For the following reasons the Court denies Petitioner's

Appeal.

                              **BACKGROUND**

          In 1991 Petitioner stopped receiving Supplemental Security Income, but was

eligible for Medicaid under a provision of the Maine Medical Eligibility Manual

("MMEM"). The provision allows DHS to disregard the Social Security benefits of

disabled widows, not receiving Medicare, when calculating income.

          In December of 1999 Petitioner began receiving Medicare. DHS explained that it

would now include her Social Security benefits when calculating her income. As a result

her income level worked to terminate her Medicaid eligibility effective September 30,

2000. DHS informed Petitioner that she would need to meet a $2,676.00 deductible

during the subsequent six months to receive any further Medicaid benefits.

                                                                                1

Petitioner requested a hearing and DHS sent her a Fair Hearing Report. The report described the particulars of the hearing, cited sections of law on which DHS based its decision, and explained the calculation of the deductible.

On November 5, 2001, the Hearing Officer affirmed DHS's decision, stating that they may not consider medical expenses in determining eligibility and further stating the Hearing Officer had no authority to waive any portion of the deductible.

## DISCUSSION

### Due Process

The Fourteenth Amendment of the United States Constitution and Article One of the Maine Constitution guarantees that no person shall be deprived of "life, liberty or property without due process of law." U.S. Const. amend. XIV; Me. Const. art.1, §6-A. The United States Supreme Court has identified what process is due where life, liberty or property interests are at stake. A court must consider 1) what private interests are at stake; 2) the risk of erroneous deprivation of rights due to the current procedure and the probable value of additional procedures; and 3) the governments interest including the administrative burden providing the additional procedures place on the government. Matthews v. Eldrigdge, 424 U.S. 319 (1976). Due Process is a flexible concept and the necessary procedures vary from situation to situation. Hopkins v. Department of Human Services, 2002 ME 129, ¶18; 802 A.2d 999 (internal citations omitted).

The first step in determining whether a plaintiff has a due process claim is to identify a specific liberty or property interest the government action allegedly affects. Wayfield v. Town of Tisbury, 935 F. Supp. 880, 882 (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972). Parties agree Petitioner's benefits constitute a property

2

interest and that DHS correctly determined that Petitioner failed to meet the criteria for Medicaid benefits. Therefore since terminating the benefits qualifies as government action affecting a property interest, the next step is to evaluate what procedures the State owed the Petitioner, whether the State afforded the Petitioner those procedures, and if additional procedures are necessary. Id.; see also Matthews, 424 U.S. 319 (1976).

**Arguments**

Petitioner contends DHS prejudiced her hearing by not giving her notice of the grounds upon which they were terminating her Medicaid benefits. Further, Petitioner contends DHS cited only general sections of law in the Fair Hearing Report, not specific sections as 42 C.F.R. § 431.210 requires, and DHS failed to include those sections in their termination letter. As a result the notice was ambiguous, vague and unclear leading to an arbitrary decision that violated Petitioner's due process rights.

Petitioner argues if DHS provided a detailed worksheet with relevant formulas, income information, calculations and other relevant information she could have properly prepared for the hearing. She alleges DHS's inadequate procedures create a high risk of erroneous deprivation and the additional procedures place an insignificant burden on the government. The risk of deprivation and the nature of the interest outweigh any governmental burden.

The State counters that DHS properly terminated Petitioner's benefits because her income exceeded the federal and state guidelines. Further, DHS provided Petitioner with notice of her hearing, during which Petitioner had the opportunity to cross-examine and demonstrate eligibility. Greely v. Commissioner, Department of Human Services, 748

A.2d 472 (Me. 2000). Moreover, if the Court granted her another hearing, the outcome would be the same.

**Federal Rules**

42 C.F.R. §431.206(b) requires a Medicaid agency to inform the recipient in writing of (1) the right to a hearing, (2) how to obtain a hearing, and (3) the right to represent yourself or obtain counsel, before taking action to suspend, terminate or reduce services. Hopkins, 2002 ME 129, ¶9 (citing 42 C.F.R. §431.206(b)). The notice must contain: (a) a statement of what action the state intends to take; (b) the reasons for the intended action; (c) the specific regulations that support the action; (d) an explanation of the individual's right to request a hearing; and (e) an explanation of the circumstances under which they continue Medicaid if the individual requests a hearing. Id.

**State Rules**

If the recipient requests a hearing, DHS must provide a Fair Hearing Report detailing the reasons for the agency action. If income is an issue, the Eligibility Specialist must describe how the agency calculated net income. Hopkins, 2002 ME 129, ¶10 (citing Maine Medicaid Eligibility Manual App. A.) The purpose of a hearing "is to review whether the agency acted in accord with defined policy and procedural requirements in carrying out is actions." Maine Department of Human Services reg. 10 144 332; Me. Medicaid Eligibility Manual (MMEM), App. A). The hearing officer reviews whether the agency followed proper procedures. Id. The "Eligibility Specialist" determines whether the recipient received proper notice. Id. The notice "must cite the manual section on which the decision to deny or reduce benefits is based." Hopkins, 2002 ME 129, ¶ 10.

**Notice**

Courts may vacate an agency's action if it results in "procedural unfairness." Hopkins, 2002 ME 129, ¶12 (quoting Maine v. Shalala, 81 F.Supp.2d 91, 95 (D.Me. 1999). Petitioner argues the Fair Hearing Report cited only general and not specific sections. The court in Hopkins, which dealt with the same situation and applied the same statutory formula, stated a defective notice did not prejudice Medicaid recipients when they knew the reason the state terminated their benefits was their increased income. Hopkins, 2000 ME 129, ¶15. The Petitioner has the burden of showing that DHS's notice prejudiced her in order to prevail. Id at ¶13. Petitioner fails to offer any evidence that DHS would have decided her case differently, had the Fair Hearing Report cited specific sections. The numbers clearly support DHS's decision and absent a showing of prejudice, this omission does not violate Petitioner's Due Process. Id at ¶15.

**Additional Procedures**

Petitioner also claims a worksheet describing all relevant formulas and other information would have allowed her to prepare for the hearing. However, the Fair Hearing Report laid out the statutory formula for calculating benefits. Along with the termination letter, the Fair Hearing Report provided sufficient information to enable Petitioner to understand the reasons for the intended termination of her benefits in order to prepare for the hearing. Moreover, the Petitioner does not contest the calculation of her income on which DHS based its determination. No additional preparation could have changed the outcome, Petitioner's income was too high and DHS needed to put her on the deductible plan. Id at ¶6.

**"Good Cause" Provision**

The court in Hopkins stated that as a condition of eligibility, the agency must require applicants and recipients to take all necessary steps to obtain any annuities, pensions, retirement, and disability benefits to which they are entitled, unless they can show good cause for not doing so. Hopkins, 2000 ME 129, ¶16 (citing 42 C.F.R. §435.608(a)). State law does not include a "good cause" provision. Under state rules, individuals must take all appropriate steps to obtain benefits to which they are entitled. This includes applying for the benefit and providing the other benefit source with necessary information to determine eligibility for the benefit. Hopkins, 2000 ME 129, ¶16 (citing MMEM, §1270).

Petitioner argues for the first time in Plaintiff's Reply Brief that DHS did not inform her of the "good cause" exception (available only in the Federal rule). Petitioner shows that had she been aware of the "good cause" provision she could have presented evidence at the hearing showing a reduction in her other benefits for "good cause" would keep her eligible for Medicaid benefits. Pursuant to M.R.Civ.P. 7(e) however, she should have raised this argument in her Appeal not in her Reply Brief. Maine Rules of Civil Procedure require that a reply be "strictly confined to replying to new matter raised in the opposing memorandum." M.R.Civ.P. 7(e). Further, the rules require the Petitioner to file a reply seven days after the opposing memorandum and Petitioner filed her reply eight days after DHS's opposing memorandum. Without commenting on the validity of the Petitioner's argument, she did not raise the issue in a timely manner.

The Petitioner has failed to show that DHS's notice, while not in strict compliance with procedure, contributed to an erroneous deprivation of her Medicaid benefits.

THE DOCKET ENTRY IS:

Rule 80(c) Petition for Appeal is denied.

The clerk is ordered to incorporate this decision into the docket by reference.

_____

Justice, Superior Court

**DATED: September _I(_ , 2002**

Date Filed __12-05-01__ ____Cumberland____ Docket No. __AP-01-074__
County

Action ____RULE 80C APPEAL____

                    MARITA BONVILLE          vs.          MAINE DEPARTMENT OF HUMAN SERVICES

| Plaintiff's Attorney Elizabeth L. Bancroft, Stu. | Defendant's Attorney |
| w/d ~~THERESA FORD, STUDENT ATTORNEY~~ Atty | Marina Thibeau, AAG |
| Cumberland Legal Aid Clinic | 6 STATE HOUSE STATION |
| 246 Deering Avenue | AUGUSTA, ME 04333 |
| Portland, ME 04102 | |
| (207) 780-4370 | Robert M. Laskey, AAG |
| | 6 State House Station |
| | Augusta, ME 04333-0006 |
| | (207) 626-8800 |

Date of
Entry